IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRODERICK WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23-cv-151 |
| | § | |
| BNSF RAILWAY COMPANY, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Broderick Williams ("Plaintiff" or "Mr. Williams") files this Original Complaint against BNSF Railway Company ("Defendant").

## SUMMARY

1. Plaintiff, who is a Black American, was terminated by Defendant for violation of train operating rules. Violation of the same operating rules by Defendant's other non-Black employees did not result in termination.

2. Defendant's treatment of Plaintiff was discriminatory in violation of Title VII of the Civil Rights Act of 1964.

## THE PARTIES AND JURISDICTION

3. Plaintiff Broderick Williams is a natural person residing within the confines of the Southern District of Texas, Houston Division, in the State of Texas. Plaintiff has standing to file this lawsuit.

4. Defendant BNSF Railway Company is a corporation incorporated in the State of Delaware and headquartered in the State of Texas. Defendant may be served with this Complaint through their registered agent, CT Corporation System, at 1999 Bryan St., Suite 900, Dallas, TX 75201.

5.      The Court has subject matter jurisdiction over this case based on federal question jurisdiction under Title VII of the Civil Rights Act of 1964.

6.      Venue is appropriate in the Southern District of Texas, Houston Division, because a substantial part of the events giving rise to the claims in this lawsuit occurred in this judicial district.

## FACTUAL BACKGROUND

7.      Mr. Williams, who is a Black American, started his career with Defendant as a conductor trainee on April 5, 2006. Over the next fourteen years, he worked in a variety of capacities for Defendant and in 2012 earned a promotion to locomotive engineer.

8.      Over the course of his career, Mr. Williams provided safe, reliable, and compliant service for Defendant. Mr. Williams had a strong safety and performance record throughout his tenure.

9.      On June 2, 2020, Mr. Williams was operating a freight train at the specified speed of approximately 50 miles per hour on the Union Pacific Angleton Subdivision, when a civilian vehicle's failure to stop at a private, no-whistle crossing led to a collision with his train.

10.     The driver of the vehicle was thankfully unhurt and he readily admitted that his failure to pay attention and yield to the oncoming train was the cause of the collision.

11.     On June 5, 2020, Defendant informed Mr. Williams that he was being withheld from service subject to a forthcoming investigation into alleged violations of several of the General Code of Operating Rules[1] ("GCOR") stemming from the incident three days prior.

---

[1] The General Code of Operating Rules (GCOR) is a set of operating rules used by Defendant and many other railroads in the United States.

-3-

12. Specifically, Defendant cited alleged violations of GCOR 2.21 Electronic Devices, GCOR 1.6 Conduct, and GCOR 1.47 Duties of Crew Members.

13. In reviewing footage from the locomotive cab's inward facing camera, Defendant noticed that Mr. Williams was holding his cell phone in his hand at the time of the incident, in contravention of operating rules.

14. On June 18, 2020, Defendant held an investigative hearing in which evidence and testimony were given concerning the allegations.

15. Although Mr. Williams was permitted to testify on his own behalf and Chris Mercer ("Mr. Mercer"), his union representative, could cross-examine Defendant's witnesses, Mr. Williams was not allowed to introduce all evidence beneficial to his case.

16. Samuel Post, Defendant's Assistant Terminal Superintendent and also the conducting officer for the hearing, unilaterally denied Mr. Mercer's attempts to enter character statements into the record that would have bolstered Mr. Williams's contention that his failure to properly stow his cell phone on this one occasion was an uncharacteristic omission.

17. On July 15, 2020, Defendant severed Mr. Williams's employment with the company after its investigation concluded that he had broken three of the operating rules.

18. After exhausting all available appeals through Defendant's internal processes, Mr. Williams submitted his case to a Public Law Board for arbitration.

19. On April 19, 2022, Public Law Board 7940 issued an award denying Mr. Williams's claim and upholding Defendant's decision to terminate his employment.

20. However, in arriving at this conclusion, the Public Board was careful to aver that objecting to the severity of the discipline meted out to Mr. Williams "would require the Board to find that [Defendant] acted arbitrarily or capriciously."

21. While rejecting the premise that Defendant's decision to terminate Mr. Williams was arbitrary, the Public Board did display some skepticism toward the severity of the punishment chosen in its assertion that "[p]erhaps if we were tasked with setting the level of discipline *de novo*, we might be inclined to assess a more lenient sanction."

22. Mr. Williams's admitted failure to stow his cell phone did not play a causal role in the ultimate collision that occurred. It is difficult to square Defendant's contention that Mr. Williams's use of an electronic device impaired his ability to safely operate the train with the fact that he saw the civilian vehicle nearing the crossing in a dangerous manner and accordingly began blowing the train whistle at least eight seconds before his train reached the crossing.

23. Moreover, despite the fact that Charles Oliver ("Mr. Oliver"), the train's conductor, was sitting on the left hand side of the locomotive cab and was therefore closest to the vehicle as it approached the crossing, it was Mr. Williams who first observed the vehicle and expressed his concern to Mr. Oliver that it wasn't stopping as expected.

24. The preventative actions Mr. Williams took in the prelude to the collision belie Defendant's claim that he was distracted from his duties.

25. Even if Mr. Williams had immediately applied full braking force about eight seconds before reaching the crossing, it is unlikely to have changed the outcome.

26. Simply put, a fully loaded freight train weighing over 940,000 pounds doesn't stop on a dime. The only realistic way a collision could have been averted would have been if the driver of the vehicle had heeded the train's warning whistle and stopped his vehicle shy of the crossing.

27. The shock of experiencing the first vehicular collision of his railroad career could explain any perceived delay in Mr. Williams's application of the emergency brakes following the collision as well as any inaccuracies in his subsequent recollection of events.

28. In post-termination argument, Defendant has made selective use of the case of Spencer Bates, an alleged comparator and locomotive engineer, who is represented as having been terminated by Defendant for several violations, one of which was GCOR 2.21 Electronic Devices.

29. However, no mention is made of several of Defendant's employees who are also believed to have violated GCOR 2.21 Electronic Devices, yet appear to have received lesser forms of discipline than the termination enforced on Mr. Williams: (1) Johnny Williams – a conductor for Defendant; (2) Nicky Wilhelm – an engineer for Defendant; and (3) Norman Gonzales – an engineer for Defendant.

30. Each of these comparators was caught by Defendant using their cell phone while their train was in service, but nevertheless they retained their jobs. Other non-Black employees are also believed to have violated this rule but were not disciplined with termination.

31. Plaintiff's termination was thus discriminatory in violation of Title VII of the Civil Rights Act of 1964.

## TITLE VII DISCRIMINATION ON THE BASIS OF RACE

32. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth verbatim.

33. Title VII of the Civil Rights Act of 1964 prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

34. In a case where alleged discrimination is demonstrated by circumstantial evidence, courts apply the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the framework, to establish a prima facie case of race discrimination in a termination case, a plaintiff must show that he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action

by the employer; and (4) was replaced by someone outside [his] protected group or was treated less favorably than other similarly situated employees outside the protected group." *Willis v. Cleco Corp.*, 749 F.3d 314, 319-20 (5th Cir. 2014) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)).

35. After the plaintiff establishes a *prima facie* case, the burden shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

36. The burden then shifts back to the plaintiff to show either: "(1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Black v. Pan Am. Labs., LLC*, 646 F.3d 254, 259 (5th Cir. 2011) (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)) (alteration in original).

37. The burden to establish a *prima facie* case of discrimination is not an "onerous" one. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012). Under this framework, "a plaintiff is entitled to a 'presumption of discrimination' if he can meet the minimal initial burden of establishing a prima facie case." *Id*.

38. Mr. Williams can establish a *prima facie* case of discrimination. He was a member of a protected group on the basis of his race (Black), was qualified for his position, suffered an adverse employment action, and was treated objectively less favorably than similarly situated employees who are not Black.

39. Defendant's reason for terminating Mr. Williams is neither legitimate nor non-discriminatory.

40. In addition, Defendant's contention that Mr. Williams's termination was justified is pretextual because Mr. Williams's alleged violations of policy were not the cause of the collision.

41. Defendant justifies its decision to terminate Mr. Williams on the basis of multiple policy violations in connection with the collision, but notably did not choose to charge him with a train handling violation related to the locomotive's operation.

42. Moreover, contrary to Defendant's contention, any inaccuracies in the statement Mr. Williams provided to Defendant in the immediate aftermath of the collision are not conclusive proof of dishonesty but rather reflective of a fallible memory after a traumatic event.

43. Defendant also fails to prove that Mr. Williams violated GCOR 1.47 Duties of Crew Members – his initiative in deploying the train's whistle despite being at a no-whistle crossing, in order to get the approaching vehicle to stop was actually a textbook application of the rule's instruction for crew members to "take every precaution for protection" in accounting for scenarios not explicitly covered by the rules.

44. Finally, Mr. Williams received disparate discipline from Defendant when his admitted violation of GCOR 2.21 Electronic Devices led to his termination while other employees believed to be outside Plaintiff's protected class received lesser forms of punishment for violations of GCOR 2.21.

45. The fact that Defendant's justification is pretextual and unworthy of credence, combined with Mr. Williams's *prima facie* case, is enough for a factfinder to find discrimination. *See Reeves v. Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149 (2000) ("A prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability."); *see also Haire v. Board of Sup'rs of La. State Univ. Agricultural & Mech. Coll.*, 719 F.3d 356, 365 n.10 (5th Cir. 2013) (reversing summary judgment for the employer in a

discrimination case, and holding that, "[e]vidence demonstrating that the employer's explanation is false or unworthy of credence. . . is likely to support an inference of discrimination *even without further evidence of defendant's true motive*.") (italics in original).

## JURY DEMAND

46.  Plaintiff demands a jury trial.

## DAMAGES AND PRAYER

Plaintiff asks that he be awarded a judgment against Defendant for the following:

a.  Actual damages in the amount of lost back pay, lost benefits, and other economic losses;

b.  Reinstatement or front-pay;

c.  Compensatory damages;

d.  Punitive damages;

e.  Pre-judgment and post-judgment interest;

f.  Court costs;

g.  Attorney's fees; and

h.  All other relief to which Plaintiff is justly entitled.

Respectfully submitted,

/s/ Ahad Khan
Ahad Khan
Texas Bar No. 24092624
S.D. Texas ID No. 2981398
712 Main Street, Suite 900
Houston, TX 77002
(713) 401-3558 – Telephone
ak@ahadkhanlaw.com – Email

ATTORNEY FOR PLAINTIFF
BRODERICK WILLIAMS